1   TOWNSEND AND TOWNSEND AND CREW LLP
    MARC M. GORELNIK (State Bar No. 166833)
2   Two Embarcadero Center, 8th Floor
    San Francisco, California 94111
3   Telephone: (415) 576-0200
    Facsimile: (415) 576-0300
4   Email: mmgorelnik@townsend.com

5   Attorneys for Plaintiff
    HOMEFRONT, INC.
6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  HOMEFRONT, INC.                     Case No.    C 05-00597 PJH

12              Plaintiff,              **PLAINTIFF HOMEFRONT'S OPPOSITION
                                        MEMORANDUM TO DEFENDANT
13        v.                            WANI'S MOTION TO SET ASIDE THE
                                        DEFAULT JUDGMENT**
14
    CASHMERE CRAFTS, INC. and SAFDAR    Date:       December 7, 2005
15  WANI                                Time:       9:00 a.m.
                                        Courtroom:  3, 450 Golden Gate Ave., 17th Fl.
16              Defendants.                         San Francisco

17                                      The Honorable Phyllis J. Hamilton

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                                           Page

3   I.      INTRODUCTION ..................................................................................................1

4   II.     DEFENDANT WANI AND THE HISTORY OF THE LITIGATION..........................1

5   III.    APPLICABLE LEGAL STANDARD ..................................................................7

6   IV.     WANI IS NOT ENTITLED TO RELIEF FROM THE DEFAULT
        JUDGMENT.......................................................................................................9

7
        A.     Mr. Wani's Culpable Conduct is Manifest .......................................9
8
            1.      Wani's Claim of Mistake is Unreasonable............................10
9
            2.      Wani's Failure to Respond to the Complaint Was Knowing and
10                      Deliberate...........................................................................13

11      B.     Wani Lacks a Meritorious Defense ...............................................14

12  V.      HOMEFRONT HAS BEEN PREJUDICED BY WANI'S CONDUCT ....................17

13  VI.     CONCLUSION ...............................................................................................18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

i

# TABLE OF AUTHORITIES

Page

## Cases

*Ackra Direct Marketing Corp. v. Fingerhut Corp.*,
  86 F.3d 852 (8th Cir. 1996) ............................................................... 15

*Action S.A. v. Marc Rich & Co., Inc.*,
  951 F.2d 504 (2nd Cir. 1991) ............................................................. 13

*Adriana Int'l Corp. v. Luis & Co.*,
  913 F.2d 1406 (9th Cir. 1990) ........................................................... 16

*Benny v. Pipes*,
  799 F.2d 489 (9th Cir. 1986) ............................................................. 13

*Casey v. Albertson's Inc.*,
  362 F.3d 1254  (9th Cir. 2004) ............................................................ 8

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) ........................................................... 12

*Conetta v. National Hair Care Ctrs., Inc.*,
  236 F.3d 67 (1st Cir. 2001) ............................................................... 14

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
  840 F.2d 685 (9th Cir. 1988) ............................................................... 8

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ............................................................. 13

*Foy v. Dicks*,
  146 F.R.D. 113 (E.D. Pa. 1993) ........................................................ 15

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*,
  375 F.3d 922 (9th Cir. 2004) .................................................. 8, 14, 15, 16

*Gucci America, Inc. v. Gold Center Jewelry*,
  158 F.3d 631 (2nd Cir. 1998) ............................................................. 14

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
  168 F.3d 347 (9th Cir. 1999) ............................................................... 8

*Meadows v. Dominican Republic*,
  817 F.2d 517 (9th Cir. 1987) ............................................................. 13

*Nilsson, Robbins et al. v. Louisiana Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988) ........................................................... 17

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
  507 U.S. 380 (1993) ..................................................................... 8, 13

*Taylor v. Boston & Taunton Transp. Co.*,
  720 F.2d 731 (1st Cir. 1983) ............................................................... 8

*TCI Group Life Ins. Plan v. Knoebber*,
  244 F.3d 691 (9th Cir. 2001) ....................................................... 8, 14, 15

*United States v. Amlani*,
  169 F.3d 1189 (9th Cir. 1999) ........................................................... 12

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

ii

1

**TABLE OF AUTHORITIES (con't)**

2                                                                              <u>Page</u>

3  **Statutes**

4  17 U.S.C. § 106 ................................................................................................... 16
   Fed. R. Civ. P. 55(c) ............................................................................................ 8
5  Fed.R.Civ.P. 60(b)(1) ................................................................................... 7, 8, 17

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

Defendant Safdar Wani knowingly and intentionally chose not to respond to the Complaint despite the numerous opportunities he received from plaintiff Homefront, Inc.  Mr. Wani is a highly educated and sophisticated individual who now feigns ignorance.  Such ignorance is neither credible nor justifiable.  It is not credible because the indisputable record shows that Mr. Wani repeatedly received unambiguous warnings that his actions and inactions could lead to his personal liability.  Mr. Wani's ignorance is not justifiable because, regardless of his fabricated misunderstanding, he was fully aware of his obligations and was represented by counsel during the period Homefront sought entry of his default as well as when Homefront moved by noticed motion for Mr. Wani's default judgment.  Either Mr. Wani ignored his counsel's advice or he received inadequate advice; neither are grounds to set aside the default.  The only mistake Mr. Wani made was to misjudge Homefront's determination to see this matter through to judgment.  Mr. Wani has acted inequitably and he should not be rewarded.

Should the Court be inclined to grant Mr. Wani a second chance, however manifest his culpable conduct, Homefront asks that it be awarded its attorney's fees to date as a condition precedent.  This would restore Homefront to its position at the commencement of this action, which is what Mr. Wani seeks for himself.

II.   **DEFENDANT WANI AND THE HISTORY OF THE LITIGATION**

Homefront is a designer and seller of rugs and other textile products.  Complaint, ¶ 9.  What sets Homefront apart from its competitors are Homefront's original, copyrighted designs.  Homefront's competitors may offer products of similar construction, but their designs are tribal or otherwise in the public domain.  Among those who seek to compete with Homefront are Safdar Wani and his associated companies Cashmere Crafts and The Cottage Arts Promotion, Inc.

Homefront had the misfortune of encountering Mr. Wani at the 2004 San Francisco International Gift Fair.  Operating under the name of defendant Cashmere Crafts, Mr. Wani displayed and offered for sale copies of Homefront's copyrighted works.  Complaint, ¶ 14; Declaration of Steven C. Kohn in Support of Plaintiff Homefront's Opposition Memorandum to Defendant Wani's

1  Motion to Set Aside Default Judgment ("Kohn Decl."), ¶ 2.  Following a confrontation at the trade

2  show, Homefront retained legal counsel in San Francisco.  After counsel conducted its own

3  investigation, Mr. Wani received by overnight courier an unambiguous demand letter that insisted that

4  Mr. Wani and Cashmere Crafts cease sales of infringing copies of Homefront's works.  See

5  September 14, 2004 letter from Marc M. Gorelnik to Safdar Wani, Ex. A to Declaration of Marc M.

6  Gorelnik in Support of Plaintiff Homefront's Opposition Memorandum to Defendant Wani's Motion

7  to Set Aside Default Judgment ("Gorelnik Decl.").

8       Mr. Wani refused to comply with Homefront's demands.  Instead, Mr. Wani asserted that he

9  had a container load of rugs bearing Homefront's designs ready for shipment.  Gorelnik Decl., ¶ 3.  He

10  offered to sell them to Homefront.  *Id.*  Frustrated with Mr. Wani's refusal to respect Homefront's

11  copyrights, and with the February, 2005 San Francisco International Gift Fair a month away,

12  Homefront's counsel prepared a draft complaint for copyright infringement and transmitted it to

13  Mr. Wani.  See January 12, 2005 letter from Marc M. Gorelnik to Safdar Wani, Ex. B to Gorelnik

14  Decl.  In the cover letter, Homefront's counsel stated:

15
16  > You are well aware of Homefront's specific complaints that Cashmere Crafts has
   > infringed Homefront's registered copyrighted works.  Both companies are free to
   > compete in the marketplace for chain-stitched rugs and other goods.  However,
17  > such freedom does not extend to the taking of the other's copyrighted designs.
   > Through both correspondence and phone calls you have been warned against
18  > future sales or offering for sale of goods incorporating Homefront's designs.

19  > You have mentioned the existence in India of a container full of products that
   > incorporate designs we have objected to on behalf of Homefront.  I have warned
20  > you that exporting these goods from India and selling them would give rise to
   > significant legal liabilities.  Your proposal that Homefront purchase these goods
21  > from Cashmere Crafts is entirely unacceptable.

22
23  > Last year at the San Francisco Gift Fair your company displayed and offered for
   > sale many rug designs that infringed Homefront's copyrighted works.  This year's
   > Gift Fair is a month away.  Homefront does not object to your presence at the Gift
24  > Fair and does not fear your fair competition.  However, there is no reason for
   > Homefront to compete against copies of its own original designs.  I enclose for
25  > your consideration a DRAFT complaint for copyright infringement and unfair
   > competition.  Should Cashmere Crafts (or its agent) display or offer for sale at the
26  > Gift Fair any designs that infringe on Homefront's works, I am authorized to
27  > immediately file and serve the complaint.

28

Homefront creates original designs to differentiate its goods in the marketplace and to add to their appeal. It should not and will not be forced to compete against Cashmere Crafts or anyone else for sales of Homefront's own original designs.

*Id.*

Notwithstanding these express warnings, Mr. Wani displayed and offered for sale infringing copies of Homefront's works. However, Mr. Wani eschewed use of the "Cashmere Crafts" name and instead offered the infringing goods under the banner of "Cottage Arts Promotion." Homefront followed through on its threat to file suit and Mr. Wani was served with the Complaint and Summons while present at the trade show.

Mr. Wani promptly contacted Homefront's counsel and requested additional time in which to respond to the Complaint, Gorelnik Decl., ¶ 5, thereby evidencing his awareness that a response was due. Homefront agreed to provide all defendants with a further thirty days to respond to the complaint, and Mr. Wani agreed to obtain the approval of all defendants to the stipulation. See February 23, 2005 letter from Marc M. Gorelnik to Safdar Wani, *Id.*, ¶ 6 and Ex. C thereto. Homefront's letter transmitting the stipulation continued to urge Mr. Wani to retain counsel. ("I strongly encourage defendants to retain counsel to represent them in this action. I have made this suggestion in the past, and you have declined.") The stipulation, which only defendant Wani executed, expressly provided until March 31, 2005 for Mr. Wani "to answer or otherwise respond to the Complaint for Copyright Infringement and Unfair Competition." *Id.* ¶ 7 and Ex. D thereto.

Mr. Wani continued to willfully ignore his obligation to respond to the Complaint. Prior to taking Mr. Wani's default, he was given fair notice:

In February 2005, we offered you an additional 30 days to respond to the Complaint, making your Answer due on March 31, 2005. We have not yet received an Answer or other response from you. I have advised you on multiple occasions to retain counsel, a step you have not taken. Owing to your failure to answer, to retain counsel, or to otherwise undertake a defense in this matter, please be advised that we intend to take your default.

See April 20, 2005 letter from Marc M. Gorelnik to Safdar Wani, Gorelnik Decl., ¶ 8 and Ex. E thereto. This correspondence prompted Mr. Wani to contact Homefront's counsel on April 22. Mr. Wani stated that he believed that the matter had been resolved by his signature on a document,

1   although there was no rational basis for such a belief.  The only document he signed was his

2   agreement to file an Answer by March 31, 2005.

3       Hoping to disabuse Mr. Wani of his unfounded and disingenuous belief that, notwithstanding

4   direct and written communications to the contrary, he need not respond to the Complaint, Homefront's

5   counsel again put Mr. Wani on notice that Homefront would seek his default.  However, Mr. Wani

6   would be provided with still more time to respond to the Complaint:

7       I have shown you every courtesy in giving you additional time to seek legal
        counsel and to respond to the Complaint.  It is apparent from our conversation of
8       today that you have willfully misconstrued our previous communications.  You
        tell me today that you believed this matter "was over" in view of the document
9       you signed earlier, but the only document you signed was a stipulation extending
        the time for your Answer to the Complaint to March 31, 2005.  It is now April 22.
10

11      My client has been more than patient with you.  It has now been ten (10) weeks
        since you were personally served with the Complaint and eight (8) weeks since
12      you received a generous extension of time to respond.  You have not used this
        past extension of time - or the additional three weeks since March 31 - to seek
13      counsel or file an Answer.  You now ask for more time, but I have no illusion that
        you sincerely intend to defend yourself in this matter.
14

15      Accordingly, we will move forward with entering your default in this matter.
        However, we will not file our papers with the Court until Wednesday, April 27.
16      Before that date, you should file your Answer or retain qualified counsel to seek
        from the Court an extension of time.  Qualified counsel means an attorney
17      admitted to practice in the Northern District of California who is authorized to
        make an appearance on your behalf.
18

19  See April 22, 2005 letter from Marc M. Gorelnik to Safdar Wani, Gorelnik Decl., ¶ 9 and Ex. F

20  thereto.

21      On the deadline set for Mr. Wani, on April 27, he finally contacted counsel, who in turn

22  contacted Homefront's counsel.  While the attorney-client representation had not yet been formalized,

23  Mr. Eric Goodman stated that he would respond the next day to confirm his representation and to state

24  whether Mr. Wani was willing to enter into consent judgment.  Gorelnik Decl., ¶ 10.  On this basis,

25  Homefront set aside its plans to seek Mr. Wani's default.  *Id.*  Mr. Goodman did not respond as

26  promised, so Homefront sent a reminder letter on April 29.  See April 29, 2005 letter from Marc M.

27  Gorelnik to Eric Goodman, Gorelnik Decl., ¶ 11 and Ex. G thereto.

28      Mr. Goodman confirmed in writing his representation of Mr. Wani on May 3, 2005.  See

May 3, 2005 letter from Eric Goodman to Marc M. Gorelnik, Gorelnik Decl., ¶ 12 and Ex. H thereto.

Mr. Goodman indicated that Mr. Wani's "current pursuit of an informal resolution of this case is

contingent upon your continued grant of an extension to file an answer to [Homefront's] complaint."

*Id.*  There was no "current pursuit of an informal resolution."  Only the vague notion that Mr. Wani

would consider a stipulated injunction.  The conditional nature of Mr. Wani's willingness to enter into

settlement discussions, informed by his historic lack of cooperation, was not acceptable to Homefront.

> Plaintiff will not agree to any further extensions of time for Mr. Wani to answer
> the Complaint.  This does not mean that plaintiff is adverse to entering into an
> appropriate consent judgment and permanent injunction with Mr. Wani and the
> other defendants, but plaintiff will no longer wait for Mr. Wani to file a defense.

See May 4, 2005 (transmitted 10:28 a.m.) letter from Marc M. Gorelnik to Eric Goodman, Gorelnik

Decl., ¶ 13 and Ex. I thereto.  Homefront requested entry of Mr. Wani's default at approximately

5:00 p.m. that day without having heard from Mr. Goodman.

During the first week of May, counsel for the parties met informally at the annual meeting of

the International Trademark Association.  Mr. Goodman indicated that Mr. Wani would agree to enter

into a consent judgment and asked that Homefront's counsel prepare such documents.  Homefront

prepared a form of consent judgment and transmitted it on June 10, 2005.  See June 10, 2005 letter

from Marc M. Gorelnik to Eric Goodman, Gorelnik Decl., ¶ 14 and Ex. J thereto.  The cover letter

stated:

> Enclosed please find a form of Consent Judgment acceptable to my client.  You
> will immediately note that there is no monetary demand.  This is a gesture intended
> to promote an early conclusion.  However, **Homefront will certainly seek all its
> costs and fees should it be necessary to bring this matter before the Court.**  In
> order to make this Consent Judgment work, however, defendant Cottage Arts
> Promotion must join.

*Id.*, (emphasis added).  Homefront did not receive a prompt response to the draft consent judgment

and eleven days later sent a further letter, which stated in part:

> I made very clear in [my June 10] letter that Homefront would seek entry of
> judgment as well as an award of attorney's fees in the absence of a settlement.
> Because you have not responded, I can only conclude that your client(s) are not
> interested in settling the matter and raised the notion of settlement only in order to
> force Homefront into a futile and expensive exercise.  Please let me know today if
> your client(s) are prepared to enter into a settlement.

1   See June 21, 2005 letter from Marc M. Gorelnik to Eric Goodman, Gorelnik Decl., ¶ 15 and Ex. K

2   thereto.

3       Mr. Wani's counsel responded the next day that "we have forwarded a copy to our client for

4   approval and he has requested a meeting with us to discuss the document. The meeting will occur on

5   Friday, June 23 [sic], 2005." See June 22, 2005 letter from David A. Berstein to Marc M. Gorelnik,

6   Gorelnik Decl., ¶ 16 and Ex. L thereto. This request for more time was reasonable, although it

7   continued to evidence Mr. Wani's apparent lack of urgency in dealing with this matter.

8       June 23, 2005, came and went without a meeting between Mr. Wani and his counsel. Indeed,

9   there was no word from Mr. Wani's counsel. Accordingly, on June 29, Homefront filed and served its

10  motion for entry of default judgment against Mr. Wani. On July 8, nine days after filing and serving

11  the motion and two weeks after last hearing from Mr. Wani's counsel, Homefront finally received a

12  response to its settlement proposal of June 10. The purported reason for the delay was that Mr. Wani

13  "has been extremely busy of late and recently moved and, as such, we were unable to have a

14  meaningful conversation with him" until July 8. See July 8, 2005 letter from David Berstein to Marc

15  M. Gorelnik, Gorelnik Decl., ¶ 17 and Ex. M thereto.

16      Notwithstanding the entry of his default and Homefront's repeated warnings that default

17  judgment would be sought, Mr. Wani couldn't be bothered to respond to Homefront's settlement

18  proposal. Even after filing and service of the motion for entry of default judgment, it took nine days

19  for Mr. Wani to make some time to meet with his attorneys. Quite aside from Mr. Wani's

20  inattentiveness to this matter, his requested changes to the consent judgment were unacceptable to

21  Homefront. See July 12, 2005 letter from Marc M. Gorelnik to David A. Berstein, Gorelnik Decl.,

22  ¶ 18 and Ex. N thereto.

23      Neither Mr. Wani nor his counsel opposed the motion for entry of default judgment. On the

24  day the Court entered the default judgment against Mr. Wani, he directly contacted Homefront's

25  counsel. Gorelnik Decl., ¶ 19. Counsel explained to Mr. Wani that default judgment had been entered

26  and that Homefront would file a motion for attorney's fees and costs. Mr. Wani stated that he would

27  proceed without counsel. *Id.* Homefront's counsel reported this contact to Mr. Wani's attorney. See

28

1   August 17, 2005 letter from Marc M. Gorelnik to David A. Berstein, Gorelnik Decl., ¶ 20 and Ex. O

2   thereto.  Mr. Berstein responded the next day that his firm no longer represented Mr. Wani.  See

3   August 18, 2005 letter from David Berstein to Marc M. Gorelnik, Gorelnik Decl., ¶ 21 and Ex. P

4   thereto.

5          Homefront served Mr. Wani on August 19, 2005, with a Notice of Entry of Default Judgment

6   and received no response.  (A similar Notice had previously been served on Mr. Wani's counsel.)  On

7   September 16, 2005, Homefront timely filed a motion for attorney's fees and costs, which was served

8   on Mr. Wani.  Again, this elicited no response from Mr. Wani or counsel.  For two months after

9   August 18, Homefront never heard from Mr. Wani or counsel.  Finally, on October 19, 2005, one

10  week before the hearing on Homefront's fee request, Mr. Kashif Haque telephoned Homefront's

11  counsel.  Mr. Haque indicated that he represented Mr. Wani and would be filing a motion to set aside

12  the default, which he did on October 21, 2005.

13         Subsequent to the filing of the instant motion, in which Mr. Wani blames his prior counsel for

14  his current predicament, Homefront asked that Mr. Wani waive his attorney-client privilege as to

15  communications with his prior counsel.[1]  See October 26, 2005 letter from Marc M. Gorelnik to

16  Kashif Haque, Gorelnik Decl., ¶ 22 and Ex. Q thereto.  However, Mr. Wani refused Homefront's

17  request as "overbroad and unacceptable."  See October 27, 2005 letter from Kashif Haque to Marc M.

18  Gorelnik, Gorelnik Decl., ¶ 23 and Ex. R thereto.  Moreover, Mr. Wani's counsel asserted that the

19  advice of counsel was beside the point since "at issue is Mr. Wani's state of mind, and Mr. Wani's

20  declaration provides information thereto."  *Id.*

21  **III.    APPLICABLE LEGAL STANDARD**

22         A defendant seeking to set aside a default judgment normally must demonstrate "mistake,

23  inadvertence, surprise or excusable neglect.  Fed.R.Civ.P. 60(b)(1).  "[T]he 'good cause' standard that

24

25  ─────────────

26  [1] Inasmuch as Mr. Wani impugns the Goodman Law Group for his own culpable conduct, the Court
    and Homefront are entitled to know whether Mr. Wani acted in conscious disregard of his counsel's
27  advice.

28

1    governs the lifting of entries of default under Fed. R. Civ. P. 55(c) govern the vacating of a default

2    judgment under Rule 60(b) as well." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th

3    Cir. 2001) (hereinafter "*TCI*"). Those three factors are: (1) whether the defendant's culpable conduct

4    led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the

5    default judgment would prejudice the plaintiff. "As these factors are disjunctive, the district court [is]

6    free to deny the motion [to vacate] if any of these factors [is] true." *Franchise Holding II, LLC v.*

7    *Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (internal citation omitted).

8           A mistake may be one of fact or law, but in either case it must relate to defendant's duty to

9    respond to the complaint, rather than to the merits of plaintiff's claim or other collateral matter.

10   *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). The mistake of

11   fact must be reasonable under the circumstances. Relief from a default judgment will not be granted

12   where the failure to respond reflects the defendant's conscious desire to avoid defending the suit. *TCI*,

13   244 F.3d at 697 ("a defendant's conduct is culpable if he has received actual or constructive notice of

14   the filing of the action and *intentionally* failed to answer.") (emphasis in original) (internal citation

15   omitted); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690

16   (9th Cir. 1988); *Taylor v. Boston & Taunton Transp. Co.*, 720 F.2d 731, 732-733 (1st Cir. 1983).

17   What constitutes excusable neglect "is at bottom an equitable [determination], taking account of all

18   relevant circumstances surrounding the omission. These include … the reason for the delay, including

19   whether it was within the reasonable control of the movant, and whether the movant acted in good

20   faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395

21   (1993).

22          Litigants are accountable for the acts and omissions of their attorneys. Whether a default is

23   "excusable" depends on whether the neglect of the defaulting party *and its counsel* was excusable.

24   The client's blamelessness is *immaterial* if the default resulted from "culpable conduct" by the

25   attorney. *Pioneer Investment Services*, 507 U.S. 380 at 396; *Casey v. Albertson's Inc.*, 362 F.3d 1254,

26   1260 (9th Cir. 2004) ("parties are bound by the actions of their lawyers, and alleged attorney

27   malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1).").

28

1    As shown below, Mr. Wani's default resulted from his own calculated conduct. He was

2    repeatedly instructed to consult an attorney and file an answer. Even after retaining an attorney,

3    Mr. Wani failed to file an answer or to oppose the motion for default judgment. Mr. Wani lacks a

4    meritorious defense because he remains liable even were he merely a commissioned salesperson, as he

5    claims. Finally, Homefront is not a large company. It has incurred significant costs in this litigation.

6    Should relief from default be granted to Mr. Wani, Homefront will be financially handicapped as

7    compared to its position at the beginning of this litigation. This prejudice can be cured only by

8    restoring to Homefront the fees and costs it has incurred to date.

9    **IV.    WANI IS NOT ENTITLED TO RELIEF FROM THE DEFAULT JUDGMENT**

10    Mr. Wani cannot show that his conduct was excusable. Indeed, his disrespect for the legal

11    process is painfully obvious. Mr. Wani has not demonstrated that he has a meritorious defense. If the

12    Court intends to provide Mr. Wani with his requested relief, then Homefront is also entitled to be

13    restored to its position at the outset of this litigation in order to avoid prejudice.

14    **A. Mr. Wani's Culpable Conduct is Manifest**

15    Mr. Wani is not entitled to relief from the default judgment unless he can establish that his –

16    and his attorney's – conduct lacked culpability. To meet his burden, Wani makes conclusory claims of

17    mistake and excusable neglect that are wholly incredible. Wani cannot escape the default judgment

18    because his failure to respond to the Complaint was willful and deliberate.

19    In his papers, Mr. Wani cites extensively to *TCI*, the most recent detailed explication by the

20    Ninth Circuit on relief from default judgment. In *TCI*, the appellate court reversed as an abuse of

21    discretion the district court's refusal to set aside defendant Knoebber's default. The facts of *TCI* are

22    instructive and contrast quite sharply with the facts now before this Court.

23    • Defendant Knoebber was distraught over the death of her husband, whose supplemental life

24       insurance policy was the subject of the litigation. Knoebber was under the care of a

25       psychiatrist for severe depression and was medicated with strong psychoactive drugs.

26    • While Knoebber was in the process of moving with her children from Livermore, California to

27       Tampa, Florida, she was named in a cross-claim. She was formally served in Florida and did

28

1   not timely file an answer.

2   • *Two days* after Knoebber's answer was due and without warning or notice, the cross-claimant

3   sought her default, which the clerk of the court promptly entered.

4   • Almost immediately after entry of Knoebber's default, the cross-claimant moved for entry of

5   default judgment.

6   • Knoebber did not timely oppose the noticed motion for default judgment, but did finally retain

7   counsel who, in advance of the hearing on the motion, attempted to make an appearance on

8   behalf of Knoebber.  However, the district court had already granted the unopposed motion

9   and refused to set aside the default judgment.

10   Safdar Wani is no Janet Knoebber.  Unlike the grieving Janet Knoebber, there is no evidence

11   whatsoever that any medical, psychological or other factors compromised Safdar Wani's ability to

12   understand and respond to the Complaint.  Mr. Wani does assert, however, that he is an immigrant

13   unfamiliar with the legal system in the United States.  Mr. Wani may be an immigrant, but he is also a

14   sophisticated businessman who has received the benefit of a college education at the University of

15   North Carolina.  See Declaration of Mike Santoni, ¶¶ 3 - 4 and Ex. A thereto.  As for Mr. Wani's

16   alleged unfamiliarity with the United States legal system, it appears that he has received at least one

17   summons related to traffic offenses, to which he responded.  *Id.*, ¶ 5.  If Mr. Wani can understand the

18   need to respond to a traffic citation, then he surely must have appreciated the need to respond to the

19   Complaint, particularly after his repeated communications with Homefront's counsel.

20   This Court's entry of default judgment culminated a lengthy sequence of warnings and

21   renewed opportunities afforded to Mr. Wani, who chose – for his own reasons – not to respond until

22   more than two months after entry of judgment.

23   **1.  Wani's Claim of Mistake is Unreasonable**

24   Wani's assertion that he was unaware of his duty to respond to the Complaint is objectively

25   unreasonable.

26   • He was specifically warned in January, 2005, that his display and sale of infringing copies of

27   Homefront's works at the San Francisco International Gift Fair "would give rise to significant

28

legal liabilities." Indeed, he was provided with a copy of a draft Complaint that named Wani personally.

- Following filing and personal service of the Complaint, Mr. Wani contacted Homefront's counsel to request additional time in which to respond, thereby evidencing his awareness that a response was due.

- Mr. Wani executed a stipulation agreeing to respond to the Complaint by March 31, 2005, once again showing his awareness that a response was due

- When Mr. Wani did not respond to the Complaint, on April 20, 2005 he received advanced written notice that Homefront would take his default. ("Owing to your failure to answer, to retain counsel, or to otherwise undertake a defense in this matter, please be advised that we intend to take your default.")

- Mr. Wani then disingenuously asserted, contrary to logic and fact, that he believed that the matter was concluded when he signed an agreement to respond to the Complaint by March 31.

- Homefront immediately corrected Mr. Wani's contrived misunderstanding and agreed to wait until April 27 to seek his default, urging him to retain qualified counsel.

There can be no doubt that Mr. Wani, even as a *pro se* litigant, was well aware of his duty to respond to the Complaint. He was warned in January and served in February. He was advised to retain counsel and signed an agreement to respond to the Complaint by March 31. Finally, he was given written notice on April 20 and 22 that his default would be taken owing to his failure to respond to the Complaint. These facts are well documented and they soundly rebut any notion that Mr. Wani's failure to respond was a mistake, let alone a reasonable mistake.[2] In *TCI*, by contrast, default and default judgment were sought immediately without any notice to the defendant.

---

[2] Defendant's memorandum of law contains several factual assertions that are unsupported in the accompanying Declaration of Safdar Wani. Among these is the claim that Homefront's counsel "informed Mr. Wani that his answer to the complaint is due May 2, 2005." Defendant's memorandum at page 3, line 10. As the factual record reflects, the last communication from Homefront's counsel to Mr. Wani was an April 22 letter reiterating the March 31 due date for an answer and stating that defendant's default would be taken on April 27.

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

11

1    Belatedly, on April 27 -- the limit of Homefront's forbearance to seek his default -- Mr. Wani

2    finally contacted an attorney, Mr. Eric Goodman.  Following Mr. Goodman's call to Homefront's

3    counsel, Homefront again set aside its plans to take Mr. Wani's default.  A week later, as a represented

4    party, Mr. Wani set down conditions for his cooperation.  He would not engage in settlement efforts

5    unless he received yet more time to respond to the Complaint.  This condition was not acceptable to

6    Homefront, which had endured many months of futility.  Homefront gave one final warning and then

7    sought entry of Mr. Wani's default, which the Clerk of the Court entered on August 17, 2005.

8    In his papers, Mr. Wani asserts that he "felt secure that either a responsive pleading will be

9    filed or an extension of time to do so would be sought and received."  Wani Decl., ¶ 5.  Thereafter,

10   Mr. Wani asserts that there was a "dispute" with his counsel "over the deposit."  *Id.*, ¶ 6.  Mr. Wani

11   suggests, but does not expressly state, that his default was a direct consequence of a fee dispute with

12   his attorney.  Of course, Mr. Wani presents only one side of the story.[3]

13   • Did Mr. Wani actually authorize Mr. Goodman to prepare and file a response to the

14   Complaint?  If not, then his "secure" feeling that a response would be filed was

15   unreasonable.

16   • Assuming Mr. Goodman conditioned his appearance on receipt of an appropriate

17   retainer, and further assuming that Mr. Wani knew of this condition, why did Mr. Wani

18   create a dispute that prevented Mr. Goodman from moving forward?

19

20   _____

21   [3] Notwithstanding Homefront's express request, Mr. Wani has refused to waive his attorney-client privilege with regard to his communications with his prior counsel.  This is fundamentally unfair to Homefront for three reasons:  (1) The parties are now before the Court on Mr. Wani's request for relief

22   from default; (2) Mr. Wani lays the blame for his default, at least in part, on his prior counsel; and (3) allowing the privilege prevents Homefront from learning whether Mr. Wani's failure to respond to the

23   Complaint was due to counsel's or Mr. Wani's culpable conduct.  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may

24   not be used both as a sword and a shield.  Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.") (internal

25   citations omitted).  *See also United States v. Amlani*, 169 F.3d 1189, 1196 (9th Cir. 1999) (defendant may not shield access to the very information that plaintiff must refute, otherwise plaintiff would be

26   forced to rely on defendant's self-characterization of events).  There is no reason for Mr. Wani to shield those communications except to conceal his own culpable conduct.

27

28

1    Mr. Wani then asserts that "he mistakenly believed that" the entry of default caused the loss of

2    "the case and of all [of his] rights and remedies."  Wani Decl., ¶ 7.  At this point in time, by his own

3    admission, Mr. Wani was represented by counsel.  If he failed to get advice from counsel, Mr. Wani

4    acted unreasonably.  And if he sought advice from Mr. Goodman, it is inconceivable that

5    Mr. Goodman would have offered such an errant view of the law.  And if Mr. Goodman misled

6    Mr. Wani, however unlikely, the law does not provide relief from default.  The client's blamelessness

7    is *immaterial* if the default resulted from "culpable conduct" by the attorney.  *Pioneer Investment*

8    *Services*, 507 U.S. 380 at 396 ("the proper focus is upon whether the neglect of respondents *and their*

9    *counsel* was excusable.") (emphasis in original).

10    Notwithstanding the past futility of seeking Mr. Wani's cooperation, Homefront refrained from

11    seeking entry of Mr. Wani's default judgment from May 6 to June 29.  The purpose of the delay was to

12    explore whether settlement might be possible.  Homefront transmitted a draft Consent Judgment on

13    June 10, but Mr. Wani could not be bothered to address the matter.  His counsel represented that

14    "Mr. Wani has been extremely busy of late."  Consequently, Mr. Wani did not meet with his counsel

15    to discuss the June 10 proposal until July 8, 2005.  By then, Homefront had noticed its motion for

16    default judgment.

17    Defendant Wani was never genuinely mistaken about his obligation to respond to the

18    Complaint.  And if he ever was mistaken, he was repeatedly corrected, although it never resulted in

19    the filing of a responsive pleading.  Finally, Mr. Wani's efforts to lay the mistake at the feet of his

20    counsel are not credible.

21        **2.**    **Wani's Failure to Respond to the Complaint Was Knowing and Deliberate**

22    Relief from default will be denied where the default resulted from defendant's "culpable

23    conduct."  *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984); *Benny v. Pipes*, 799 F.2d 489, 494 (9th

24    Cir. 1986).  A defendant should not be able to cause the default and then later seek relief from it.

25    *Meadows v. Dominican Republic*, 817 F.2d 517, 521-522 (9th Cir. 1987); *Action S.A. v. Marc Rich &*

26    *Co., Inc.*, 951 F.2d 504, 507 (2nd Cir. 1991).  The Ninth Circuit affirmed the default judgment in

27    *Benny v. Pipes, supra*, because the defendants had actual notice of the complaint, conclusively shown

28

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH          13

1   by defendants' request for more time to respond, yet had failed to respond.  Similarly, defendant Wani

2   had actual notice of the complaint, confirmed by his request for more time to respond.  Like the

3   defendants' in *Benny*, Mr. Wani's conduct is culpable.

4   　　　　"Culpable" does not mean "evil."  It means inexcusable.  Thus, culpability and excusable

5   neglect are opposite sides of the same coin.  Accordingly, if neglect is inexcusable, relief from default

6   will be denied due to defendant's culpable conduct.  *TCI*, 244 F.3d at 698.  Mere failure to respond to

7   a lawsuit of which the defaulting party has actual knowledge may not be "culpable" conduct in every

8   case.  Such failure is not culpable where defendant offers "a credible, good faith explanation negating

9   any intention to take advantage of the opposing party, interfere with judicial decision making, or

10   otherwise manipulate the legal process."  *Id*. at 697.  It is clear that "choosing" to miss deadlines in

11   view of medical and family emergencies is excusable, as is neglect resulting from ongoing

12   psychological problems.

13   　　　　Not every excuse, however, comprises excusable neglect.  There must be a legally cognizable

14   justification.  In particular, simply choosing not to deal with a complaint is not excusable and is thus

15   culpable conduct.  *Franchise Holding II*, 375 F3d at 926 (conduct held culpable where defendant

16   failed to respond after receiving advance notice that default would be sought); *Gucci America, Inc. v.*

17   *Gold Center Jewelry*, 158 F.3d 631, 634 (2nd Cir. 1998) (deliberate decision not to respond to

18   complaint comprises culpable conduct); *Conetta v. National Hair Care Ctrs., Inc.*, 236 F.3d 67, 75

19   (1st Cir. 2001).

20   　　　　Like the defendants in aforementioned cases, Mr. Wani – a represented party – failed to

21   respond to the complaint despite many warnings that his default would be sought.  In view of the

22   voluminous factual record and the fact that Mr. Wani had the benefit of legal counsel, there cannot be

23   any doubt that his failure to respond to the complaint was knowing and willful.  His sole excuse, that

24   he is an immigrant unfamiliar with the United States legal system, is wholly incredible in view of his

25   college education and past scrapes with our legal system.

26   **B.　　Wani Lacks a Meritorious Defense**

27   　　　　The party seeking relief from default bears the burden of showing a defense that might make

28

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

14

1   the result at trial different than that reached by default.  "If, however, the defendant presents no

2   meritorious defense, then nothing but pointless delay can result from reopening the judgment." *TCI,*

3   244 F.3d at 697.  Failure to present a meritorious defense is ground for denial of relief. *Franchise*

4   *Holding II,* 375 F.3d at 926 (litigant "had to present district court with specific facts that would

5   constitute a defense.")  Where a party has engaged in willful misconduct or a deliberate failure to

6   respond, "the mere existence of a meritorious defense does not prohibit default judgment." *Ackra*

7   *Direct Marketing Corp. v. Fingerhut Corp.,* 86 F.3d 852, 857 (8th Cir. 1996).  Conversely, absent a

8   meritorious defense, no amount of faultlessness by defendant will justify setting aside the default

9   judgment.

10        To demonstrate a meritorious defense, the defendant's moving papers should contain:

11   •  a proposed answer;

12   •  a declaration regarding the facts supporting the defense(s); and

13   •  a legal memorandum concerning the legal defense(s).

14   Simple denials and conclusory statements do not comprise a defense sufficient to vacate a default

15   judgment. *Franchise Holding II,* 375 F.3d at 925; *Foy v. Dicks,* 146 F.R.D. 113, 116 (E.D. Pa. 1993).

16        Homefront sued Mr. Wani for copyright infringement and unfair competition.  Under the

17   Copyright Act:

18       "[T]the owner of a copyright ... has the following exclusive rights to do and to authorize

19       any of the following:

20       (1) to reproduce the copyrighted work in copies or phonorecords;

21       (2) to prepare derivative works based upon the copyrighted work;

22       (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or

23       other transfer of ownership, or by rental, lease, or lending;

24           *     *     *

25       (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and

26       pictorial, graphic, or sculptural works, including the individual images of a motion

27       picture or other audiovisual work, to display the copyrighted work publicly.

28

1   17 U.S.C. § 106.  In its complaint against Mr. Wani, Homefront alleged that defendants "infringe

2   Homefront's exclusive rights in and to the identified works through violation of each of the exclusive

3   rights listed in 17 U.S.C. § 106."  Complaint, ¶ 22.  Following entry of Mr. Wani's default, the

4   allegations of the complaint are accepted as true.  *Adriana Int'l Corp. v. Luis & Co.*, 913 F.2d 1406,

5   1414 (9th Cir. 1990).

6          The essence of Mr. Wani's defense is that he "was merely a commission salesperson for [co-

7   defendant] Cashmere Crafts, Inc." and that he "never infringed any of" Homefront's copyrights.

8   Mr. Wani asserts that he has no control over Cashmere Crafts.  Wani Declaration, ¶ 9.  Counsel for

9   Mr. Wani argues that a commissioned salesperson's actions "cannot result in personal liability."

10  Defendant's Memorandum at page 4, lines 25-27.[4]

11         As a threshold matter, Mr. Wani's legal conclusion that he did not infringe Homefront's

12  copyrights is not entitled to any weight.  To show a meritorious defense, Mr. Wani must allege

13  exculpatory facts, not assert legal conclusions.  "A mere general denial without facts to support it is

14  not enough to justify vacating a default or default judgment."  *Franchise Holding II,* 375 F.3d at 926.

15  Similarly, counsel's assertion that a commissioned salesperson cannot incur liability is a legal rather

16  than factual argument, although even as a legal argument it is without merit.  Copyright liability arises

17  from either *doing* or *authorizing* certain proscribed acts, not from the actor's self-identification.

18         Defendant Safdar Wani was present at both the July, 2004 and February, 2005 San Francisco

19  International Gift Shows.  It is self-evident that Mr. Wani displayed goods at these events, which exist

20  solely for the purpose of sales and promotion of the exhibitors' goods.  Mr. Wani's act of displaying

21  copies of Homefront's copyrighted works is a direct violation of Homefront's exclusive rights under

22  17 U.S.C. § 106(5) ("the copyright owner has the exclusive right …in the case of … pictorial, graphic,

23  or sculptural works … to display the copyrighted work publicly.").  It is immaterial whether or not

24

25

26  [4] Counsel's assertion that "Mr. Wani did not manufacture, purchase, import, export or distribute any of
    Plaintiff's copyrighted works" is not supported in the factual record.  See Defendant's Memorandum at
    page 4, lines 23-24.  In any event, the scope of the Copyright Act is not so narrow.

27

28

1   Mr. Wani appeared in San Francisco as a commissioned salesperson. The only issue is whether Mr.

2   Wani distributed or displayed copies of Homefront's works. Mr. Wani does not and cannot dispute

3   these facts. Indeed, it would be absurd if Mr. Wani asserted that he sought to sell visual works

4   without offering samples or illustrations to his potential customers.

5   **V.    HOMEFRONT HAS BEEN PREJUDICED BY WANI'S CONDUCT**

6         This Court may condition relief from a default judgment "upon such terms as are just."

7   Fed. R. Civ. P. 60(b). Courts are allowed to impose conditions on the setting aside of a default, as

8   well as upon vacating a default judgment. *Nilsson, Robbins et al. v. Louisiana Hydrolec*, 854 F.2d

9   1538, 1546-1547 (9th Cir. 1988) ("we now hold that it is appropriate to condition setting aside a

10   default upon the payment of a sanction."). On appeal in *Nilsson* was the district court's requirement,

11   as a condition of granting relief from default, that the defaulting party pay the plaintiff's attorney's

12   fees. In affirming, the Ninth Circuit noted:

> By conditioning the setting aside of a default, any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation can be rectified. According to Wright, Miller & Kane, the most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. Courts have eased these burdens by requiring the defaulting party to provide a bond to pay costs, to pay court costs, or to cover the expenses of the appeal. The use of imposing conditions can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences.
>
>       *     *     *
>
> The condition most commonly imposed is that the defendant reimburse the plaintiff for costs incurred because of the default. In some cases, it may also be appropriate for the defendant to be required to post bond to secure the amount of the default judgment pending a trial on the merits.

*Id.* at 1547 (internal citations omitted).

         As set forth in Homefront's motion for attorney's fees and costs, Homefront incurred $39,218

in attorney's fees and costs *exclusive* of its motion for attorney's fees and its opposition to the instant

motion to vacate the default judgment. Outside of counsel's initial investigation, the preparation and

filing of the Complaint, and the entry of Cashmere Crafts' default, the rest of these activities will have

been for naught if Mr. Wani is relieved of his default. In addition to all of Homefront's futile pre-

default activities, Homefront's attorney's fees motion will have been wasted. Moreover, Homefront

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH          17

1    has incurred substantial fees in connection with Mr. Wani's instant motion.

2         Homefront is a small, family-run business.  It lacks a boundless budget to fund this litigation.

3    Kohn Decl., ¶ 4.  If Mr. Wani gets the "do over" that he seeks through this motion, equity requires that

4    Homefront be returned to the same position had Mr. Wani timely responded to the Complaint.  All of

5    Homefront's other fees and costs must be recouped.  Otherwise, Homefront is necessarily

6    compromised in its ability to pursue this action.  *Id*.  This would be of little moment to a large

7    corporation, but it is quite significant to a small business like Homefront.  Accordingly, should the

8    Court be inclined to relieve Mr. Wani of his default, such relief should be conditioned on Mr. Wani's

9    prior payment to Homefront of:

|    |    |
| --- | --- |
| Homefront's fees and costs from March 1, 2005 (date answer was due) through entry of default judgment | $23,104 |
| Homefront's fees and costs in connection with the fee motion | $7,751 |
| Homefront's fees and costs in connection with opposing this motion[5] | $10,750 (estimate) |
| TOTAL | $41,605 |

18   Gorelnik Decl., ¶ 24.

19        Mr. Wani should not be rewarded with a tactical advantage, i.e., forcing Homefront to

20   needlessly incur unrecompensed legal expenses, as a consequence of his default and subsequent relief.

21   Homefront must be restored to the *status quo ante* just as Mr. Wani asks for himself.

22   **VI.   CONCLUSION**

23        Mr. Wani is not entitled to relief from the default judgment.  His default followed from his

24   knowing conduct, whether through indifference or design.  Homefront took his default only after

---

26   [5] Should defendant Wani's motion for relief from default be denied, Homefront will supplement its fee request to include its fees and costs associated with its opposition.

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

18

1  repeated warnings and additional opportunities to cure. Even when represented by counsel, Mr. Wani

2  declined to answer, timely move for relief, or even to oppose the noticed motion for default judgment.

3  Mr. Wani casts aspersions at his counsel, but even were his attorney neglectful – of which there is no

4  credible evidence – that neglect is imputed to Mr. Wani. Regardless of Mr. Wani's culpable conduct,

5  he lacks a meritorious defense. Finally, unless Homefront is restored to its financial position at the

6  beginning of this action, it would be severely prejudiced by the relief sought by Mr. Wani.

7  Dated: November 16, 2005.                    Respectfully submitted,

8                                               TOWNSEND AND TOWNSEND AND CREW LLP

9

10  By: _____

11        Marc M. Gorelnik
          *Attorneys for Plaintiff*
          HOMEFRONT, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Homefront, Inc. v. Cashmere Crafts, Inc. and Safdar Wani*
PLAINTIFF HOMEFRONT'S OPPOSITION MEMORANDUM TO DEFENDANT WANI'S MOTION
TO SET ASIDE THE DEFAULT JUDGMENT
Case No. C 05-00597 PJH

19